IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| B.M., a Minor, by and through His Next Friends, ROGER MILLER and SHARON MILLER, and ROGER MILLER, Individually, and SHARON MILLER, Individually,<br><br>Plaintiffs,<br><br>v.<br><br>SOUTH CALLAWAY R-II SCHOOL DISTRICT,<br><br>Defendant. | Case No. 11-4029-NKL |

ORDER

Before the Court is Defendant South Callaway R-II School District's ("South Callaway") Motion for Judgment on the Pleadings [Doc. # 52] and Motion for Summary Judgment [Doc. # 54]. For the following reasons, the Court grants the Motion for Summary Judgment. The Motion for Judgment on the Pleadings is denied as moot.

**I.  Background**

This action was filed in January of 2011, by Plaintiffs B.M., by and through his Next Friends and parents, Roger Miller and Sharon Miller, and Roger Miller and Sharon Miller individually. The Millers' suit is brought under the Rehabilitation Act of 1973, 29 U.S.C. §§ 701, et seq. ("Section 504"), and the Americans with Disabilities Act, 42 U.S.C. §§ 12010, et seq. ("ADA"), against South Callaway. The allegations concern B.M's attendance

in the district during the 2006–07 and 2007–08 school years.  In Count I of their complaint, the Millers allege that South Callaway discriminated against B.M. based on disability by failing to provide necessary accommodations to B.M. under Section 504.  The Millers allege specifically that South Callaway failed to determine whether B.M. was eligible for services under Section 504, failed to determine whether his behavior was a manifestation of his disability, and failed to follow Section 504's procedural requirements.  [Doc. # 1 at 5-6].

In Count II, the Millers allege that they paid for evaluations, adult supervision, and compensatory educational services for B.M., and will continue to incur charges for counseling services, as a result of South Callaway's failure to properly identify B.M. as a student in need of services and provide B.M. with appropriate accommodations.  [Doc. # 1 at 7].  The Millers seek several forms of relief, including an order for compensatory education services, monetary damages for B.M. and for his parents individually, and attorney's fees and costs.

In both its motion for judgment on the pleadings and motion for summary judgment, South Callaway advances the same three arguments:

(1) the claims being asserted in this litigation have not been

administratively exhausted;

(2) Roger Miller and Sharon Miller lack standing to assert their individual

claims under the Rehabilitation Act and the ADA; and

(3) the uncontroverted material facts establish that South Callaway did not

discriminate against B.M. based on disability.

2

Though South Callaway simultaneously filed both a motion for judgment on the pleadings and motion for summary judgment, the Court only finds it necessary to review South Callaway's motion for summary judgment in order to resolve the case.

**II.    Facts**

South Callaway is a public school district located in Callaway County, Missouri. Plaintiff B.M. has been a student in the District since at least pre-school. [Doc. # 55 at 6]. During the 2006-2007 school year, B.M. was a regular education second grade student in South Callaway. During the 2007-2008 school year, B.M. was a regular education third grade student in the District. During B.M.'s second and third grade years, he had disciplinary referrals to the principal's office and received some out of school suspensions. [Doc. # 55 at 8-10]. In 2008, B.M. was diagnosed with ADHD. [Doc. # 55 at 18]. The District did not conduct an evaluation to determine if B.M. had a disability under the Individuals with Disabilities Education Act ("IDEA") or Section 504 during either school year. [Doc. # 55 at 18].

B.M. began attending the fourth grade as a regular education student at the beginning of the 2008-2009 school year. [Doc. # 55 at 26]. On or about September 15, 2008, B.M. disrupted his regular education class, threw a chair in the principal's office, used obscene language and kicked the principal in the shins resulting in a 6 ½ day suspension. [Doc. # 55 at 28]. South Callaway administratively determined that the suspension for B.M.'s conduct on or about September 15, 2008, did not constitute a pattern of exclusion that resulted in a significant change of educational placement.

3

On or about September 18, 2008, Sharon Miller requested that South Callaway "do a 504." [Doc. # 55 at 29]. On that day, South Callaway documented a referral by Sharon Miller for an IDEA special education evaluation. [Doc. # 55 at 25; Doc. # 67 at 20].[1] Sharon Miller has testified that she never believed her son was a student qualified for services under IDEA. [Doc. # 65-2 at 2]. Miller stated that South Callaway staff informed her that B.M first had to be evaluated under IDEA before a 504 evaluation could take place. [Doc. # 65-2 at 2].

On or about October 13, 2008, B.M. was suspended for using obscene language toward District staff. [Doc. # 55 at 31]. Subsequent to that suspension, South Callaway administratively concluded that the combination of the September 15 and October 13, 2008, suspensions did not constitute a pattern of exclusion that resulted in a significant change of placement. B.M was again suspended in late October of 2008 for disruptive conduct. [Doc. # 55 at 33].

South Callaway did not conduct a manifestation determination to determine whether B.M.'s misconduct that resulted in the various suspensions was related to a disability.

On or about October 23, 2008, Sharon Miller provided the District with written

---

[1] Though the Millers claim to deny this fact, they present no evidence to the contrary in the post-deposition affidavit cited in their response. Mere denials which are not supported by specific facts are not sufficient to demonstrate a factual dispute. *See* Fed. R. Civ. P. 56(c); *Copeland v. ABB, Inc.*, 521 F.3d 1010, 1013-14 (8th Cir. 2008).

consent to conduct an IDEA evaluation for B.M. [Doc. # 55 at 32]. However, Miller testified later that she "felt [she] had to sign it and didn't know that we weren't doing 504 as I requested. I did not know to question further and felt I did not have a choice anyway." [Doc. # 65-2 at 13]. On or about October 31, 2008, South Callaway provided the Millers with a "504 Notice of Action" which informed the Millers that South Callaway was refusing at that time to conduct a Section 504 initial evaluation because it was then conducting an IDEA initial evaluation. [Doc. # 55 at 33]. On or about November 20, 2008, South Callaway convened a multidisciplinary team that included Sharon Miller to review the results of the District's IDEA educational evaluation. The team concluded that B.M. did not meet criteria to be identified as a student with a disability pursuant to the IDEA. [Doc. # 55 at 36]. The Millers did not challenge that 2008 eligibility decision through the IDEA's due process procedures.

On December 2008, a Section 504 multidisciplinary team, that included Mrs. Miller, concluded that B.M. was a student with a disability as then defined by Section 504. [Doc. # 55 at 38]. On or about December 11, 2008, Sharon Miller filed a complaint on behalf of B.M. against the District with the U.S. Department of Education Office for Civil Rights ("OCR"). A Section 504 Accommodation Plan was prepared for B.M. on or about January 8, 2009. Mrs. Miller disagreed with the Plan on the grounds that it proposed placing B.M. in special education and on a shortened day. [Doc. # 55 at 43]. B.M.'s 504 team reconvened in March 2009 to finalize the 504 Plan. [Doc. # 55 at 45].

Through the IDEA process, a team concluded in August 2009 that B.M. was now eligible for an Individual Education Program ("IEP") pursuant to the IDEA. Although Mrs. Miller testified that she did not refuse consent for B.M. to receive special education services at that time, she testified that she did not sign consent for such services and understood that, if she did not sign consent, the District could not place B.M. in special education. [Doc. # 55 at 47].[2]

At the end of the 2008-2009 school year, B.M. was promoted to the fifth grade. On or about May 27, 2010, the OCR found that South Callaway did not comply with Section 504 with respect to allegation one [3] of the complaint filed by the Millers, but OCR did not find a violation with respect to the other thirteen allegations asserted by the Millers. [Doc. # 65-1]. South Callaway entered into a resolution agreement with OCR to resolve the OCR findings with respect to allegation one of the Miller's complaint. [Doc. # 55 at 49]. The OCR stated in its decision that if Mrs. Miller disagreed with B.M.'s 504 plan, she could file 504 due process proceedings against the District to challenge the plan, but she never did so. [Doc. # 55 at 49].

## III.   Discussion

---

[2] The Millers deny this fact in their opposition briefing, referencing several paragraphs in a post-deposition affidavit completed by Sharon Miller. However upon review of this affidavit, the Court does not find any information constituting a denial of this fact and thus will consider it uncontroverted.

[3] Allegation one alleged that South Callaway denied B.M. a free, appropriate public education ("FAPE") by using out of school suspensions for inappropriate behavior that is a manifestation of his disability, which resulted in a significant change in placement.

6

### A. Legal Standard

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case." *Rakes v. Life Investors Ins. Co. of Am.*, 582 F.3d 886, 893 (8th Cir. 2009) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The moving party bears "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992). However, when a summary judgment motion is made and supported by evidence as provided in Rule 56(c), the nonmoving party may not rest on mere allegations or denials in its pleadings but "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

### B. Administrative Exhaustion

South Callaway first argues that summary judgment must be granted in its favor because the Millers have not exhausted their administrative remedies within the school district. As stated above, the Millers brought suit under Section 504 of the Rehabilitation Act and the ADA. Neither of these statutes requires administrative exhaustion before filing suit. However, there is a related statutory enactment which does: the Individuals

7

with Disabilities Education Act, 20 U.S.C. §§ 1400, et seq. (hereafter "IDEA"). South Callaway argues that the IDEA requires the Millers to exhaust the administrative process even though the suit is not brought explicitly under the IDEA.

The IDEA entitles children with disabilities the right to a free appropriate public education ("FAPE"). *Forest Grove Sch. Dist. v. T.A.*, 129 S. Ct. 2484, 2487 (2009). The FAPE is considered a "basic floor of opportunity" to allow a child with disabilities access to an individually designed education. *See Yankton Sch. Dist. v. Schramm*, 93 F.3d 1369, 1372 (8th Cir. 1996). In implementing the FAPE, school districts are required to develop an Individual Education Program ("IEP"), which is a "comprehensive statement of the educational needs of [the] handicapped child and the specially designed instruction and related services to be employed to meet those needs.'" *C.B. ex rel. B.B. v. Special School Dist. No. 1*, 636 F.3d 981, 989 (8th Cir.2011) (quoting *School Committee of Burlington v. Department of Education*, 471 U.S. 359, 368 (1985)).

Though both IDEA and Section 504 concern accommodations for disabled children, IDEA grants a positive right to a FAPE while Section 504 simply bars federally funded entities from denying a free appropriate public education on the basis of disability. *See Jeremy H. v. Mount Lebanon Sch. Dist.*, 95 F.3d 272, 278 (3d Cir.1996). However, most courts have found few differences in practice between the IDEA and Section 504/ADA:

> The IDEA and Section 504 of the Rehabilitation Act provide nearly equivalent requirements. The IDEA provides an affirmative duty to provide education, whereas the Rehabilitation Act prohibits discrimination against

> the disabled. There appear to be few differences, if any, between IDEA's affirmative duty and § 504's negative prohibition. Similarly, the ADA also prohibits discrimination against the disabled. Like Section 504, ADA claims can be based on the discriminatory effect on disabled children of seemingly neutral practices and do not require a finding of intentional discrimination.

*Swope v. Central York School District*, 2011 WL2471518, at *3 (M.D. Pa. 2011) (citations omitted); *see also Burke v. Brookline Sch. Dist.*, 2007 WL 836820, at * 1 (D. N.H. 2007) ("Because of similar provisions in the ADA, Section 504, and the IDEA, claims arguably might arise under all three statutes.").

As discussed above, claims under IDEA require administrative exhaustion before suit is filed in federal or state court. Among the procedural safeguards employed by IDEA is review of a district's decision through an impartial due process hearing. 20 U.S.C. § 1415. The administrative process is required in order to promote the resolution of these matters by expert local agencies, to resolve evidentiary disputes, to develop a factual record, and to encourage consistency and procedural efficiency. *See Payne v. Peninsula School Dist.*, 653 F.3d 863, 875-76 (9th Cir. 2011) (citations omitted). South Callaway argues that the statutory text of IDEA requires exhaustion for the Millers' Section 504 and ADA claims. The relevant text states as follows:

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990 [42 U.S.C.A. § 12101 et seq.], title V of the Rehabilitation Act of 1973 [29 U.S.C.A. § 791 et seq.], or other Federal laws protecting the rights of children with disabilities, *except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) shall be*

9

> *exhausted to the same extent as would be required had the action been brought under this subchapter.*

20 U.S.C. § 1415(l) (emphasis added).

The plain text of section 1415(l) requires parents to fulfill IDEA's exhaustion requirement when seeking relief available under the ADA and the Rehabilitation Act if the relief sought under those statutes would also be available under the IDEA. *See e.g. Payne,* 653 F.3d at 875 (courts should look at the complaint's prayer for relief and determine whether the relief sought is also available under the IDEA). However, exhaustion is excused when the administrative process would be futile or inadequate. *Honig v. Doe*, 484 U.S. 305, 327 (1988). Plaintiffs invoking the futility exception bear the burden of proving that administrative exhaustion would be futile or inadequate. *See id.*

Here, it is undisputed that the Millers have not exhausted any remedies under the IDEA. Thus, to determine whether exhaustion is required, the Court must determine 1) if the relief being sought by the Millers is available under the IDEA, thus triggering the exhaustion requirement, and 2) whether administrative exhaustion is futile in this case, as the Millers argue it is.

The Millers' claims fall clearly within the exhaustion requirement of the IDEA even though their complaint only references Section 504 and ADA. The IDEA is broad in scope; it permits plaintiffs to file a complaint "with respect to any matter relating to ... the provision of a free appropriate public education." 20 U.S.C. Sec. 1415(b)(1)(E).

"Whenever a plaintiff brings a claim that is educational in nature" purporting to challenge the provision of educational services by a local school district, the claim is "presumptively redressable" through the IDEA's administrative procedures." *Ellenberg v. New Mexico Military Institute*, 478 F.3d 1262, 1280 (10th Cir. 2007). Here, as one form of relief, the Millers seek compensatory educational services allegedly needed because South Callaway wrongly changed B.M's educational placement without providing appropriate accommodations. Such services would fundamentally be aimed at redressing defects in the educational program offered by South Callaway to B.M. and is thus clearly available under the IDEA. *See e.g. M.W. ex rel. Williams v. Avilla R-XIII Sch. Dist.*, 2011 WL 3354933, at *4 (W.D. Mo. 2011) (holding exhaustion required where plaintiffs alleged student was "disabled and in need of accommodations" and sought compensatory education damages because the claims were "'educational in nature' and . . . redressable under the IDEA.").

Any argument that B.M's request for monetary damages renders the exhaustion requirement inapplicable is without merit. While it is true that compensatory damages are not available under IDEA, requests for such damages are considered substitutes for IDEA relief as long as the damages being sought are essentially the costs of counseling, tutoring or alternative educational services, forms of relief available under the IDEA. *Payne*, 653 F.3d at 877; U.S.C. § 1401 (26)(A); 34 C.F.R. 300.14. The rationale behind this equivalency is that plaintiffs seeking the costs of educational services "are seeking the same relief, even if they are willing to accept cash in lieu of services in kind." *Payne*,

653 F.3d at 877. Further, if exhaustion were excused simply because plaintiffs sought damages, the legislative intent of the IDEA could be thwarted:

> The IDEA is intended to remedy precisely the sort of claim made by [the student]: that the district failed to provide her with appropriate educational services. The fact that [the student] seeks damages, in addition to relief that is available under the IDEA, does not enable her to sidestep the exhaustion requirements of the IDEA.

*Polera v. Board of Educ. of Newburgh Enlarged City School Dist.*, 288 F.3d 478, 488 (2d Cir. 2002).

Here, the Millers have requested monetary damages caused by the alleged violation of B.M.'s rights under Section 504 and ADA, as well as damages for money expended by parents to pay for services, such as evaluations, compensatory educational services, and adult supervision, which South Callaway allegedly failed to provide. Regarding the money expended by parents, the IDEA provides relief for the costs of alternative educational services and thus the Millers are required to exhaust their administrative remedies before bringing such claims. Further, the Millers have not pled or presented evidence that they are seeking damages beyond the cost of remediation for South Callaway's decisions affecting B.M.'s educational placements. Certain types of monetary relief unrelated to the district's denial of FAPE--for example, relief for constitutional violations under Section 1983--would fall outside the scope of the IDEA and exhaustion would not be required for those damages claims. *See Payne*, 653 F.3d at 877. However, the Millers have not brought Section 1983 claims or made a persuasive showing that their claims for damages are not simply an attempt to compensate for South

Callaway's denial of a FAPE. The Court cannot permit parties to evade exhaustion requirements simply by including a generalized pleading for monetary damages, without a plausible showing of some violation outside the scope of the IDEA. This is particularly so in instances where parties also seek injunctive relief clearly falling within the scope of the IDEA.

The Millers' main argument against applying the exhaustion requirement appears to be that B.M. was not and never has been a child receiving services under the IDEA. However, this fact is irrelevant for the purposes of determining whether exhaustion is required. Even if the Millers did not seek IDEA relief or did not desire B.M. to be considered for IDEA relief, a major purpose of the administrative exhaustion requirement, as stated above, is to promote decision-making by expert local and state education officers rather than courts. Since the Millers are seeking relief which could have been sought under IDEA, they are required to exhaust their administrative remedies at the local and state level before proceeding to court, even if only desiring relief under Section 504 and ADA.

However, even though the exhaustion requirement presumptively applies in this case, it can be excused if found to be futile. The Millers argue that the futility exception applies in their case. Essentially, they claim that B.M. would be precluded from pursuing a due process complaint at the administrative level because they are seeking relief solely under Section 504 and thus the relevant administrative authorities would lack jurisdiction.

13

[See Supplemental Authority, Doc. # 78-1].[4] However, such an argument does not apply to the circumstances of this particular case, for it is undisputed that B.M. has been declared eligible as an IDEA student by South Callaway. The Millers' choice to forego these services does not render exhaustion futile, as they could still pursue their administrative remedies under the IDEA. A parent may not bypass the IDEA's administrative procedures simply by withholding consent under the IDEA and then bringing suit under Section 504 and ADA. Further, allowing an exemption from the exhaustion requirement based on a parent's own preferences for Section 504 relief over that offered by the IDEA would defeat the legislative intent to give local and state authorities the first opportunity to resolve disputes over a student's educational disability status.

Thus, for the above reasons, and based upon the uncontroverted facts presented by both parties, it is clear that the Millers were required to exhaust their administrative remedies and thus their claims must be dismissed without prejudice.

C.     **Standing**

South Callaway contends that Roger Miller and Sharon Miller lack standing to bring Count II before the Court. There appears to be a split in the district with regard to whether parents have standing in their own right under the Rehabilitation Act and the

---

[4] The Millers submitted a supplemental affidavit from Cynthia Quetsch, an attorney for the Missouri Department of Elementary and Secondary Education ("DESE") Office of Special Education. Ms. Quetsch stated that "DESE will not provide a hearing if the complaint is solely related to identification, evaluation, educational placement, or the provision of a free, appropriate public education of the child, under the provisions of Section 504." [*See* Doc. # 78-1 at 1].

ADA. *Compare M.W. ex rel. Williams v. Avilla R–XIII School District*, 2011 WL 3354933 (W.D.Mo .2011) (finding that the parents lacked standing to pursue claims under § 504 and the ADA because neither statute "contemplate[s] damage claims by individuals who do not themselves have disabilities nor have suffered discrimination based on their own disabilities."); *with K.F. v. Francis Howell R-III School Dist.*, 2008 WL 723751, at *7 (E.D. Mo. 2008) (finding that parents have standing under § 504 and the ADA because of "the 'particular and personal' interest parents have in preventing discrimination against their child."). However, the Court need not address this issue because the Millers' failure to exhaust administrative remedies requires dismissal of both Counts I and II of the complaint.

## IV. Conclusion

Accordingly, it is hereby ORDERED that Defendant South Callaway R-II School District's Motion for Summary Judgment [Doc. # 54] is GRANTED. South Callaway's Motion for Judgment on the Pleadings [Doc. # 52] is DENIED as moot.

s/ Nanette K. Laughrey<br>
NANETTE K. LAUGHREY<br>
United States District Judge

Dated: April 11, 2012
Jefferson City, Missouri