IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| B.M., a Minor, by and through His Next Friends, ROGER MILLER and SHARON MILLER, and ROGER MILLER, Individually, and SHARON MILLER, Individually, <br><br> Plaintiffs, <br><br> v. <br><br> SOUTH CALLAWAY R-II SCHOOL DISTRICT, <br><br> Defendant. | Case No. 11-4029-NKL |

**ORDER**

Pending before the Court is the Plaintiffs' Second Motion to Reconsider and Alter or Amend Its Order and Judgment [Doc. # 95]. Plaintiffs filed a two-count Complaint [Doc. # 1] on January 20, 2011, alleging that Defendant violated Section 504 of the Rehabilitation Act of 1973, 29 U.S.C.A. § 791 ("Section 504") and the Americans with Disabilities Act, 42 U.S.C.A. § 12132 ("ADA"). In Count I of the Complaint, Plaintiff B.M. requested relief under the ADA and Section 504 for alleged discrimination based on disability. In Count II, Plaintiffs Roger and Sharon Miller, parents of B.M., requested relief for disability discrimination in their individual capacities. Defendant filed a Motion for Summary Judgment [Docs. ## 54, 55], which the Court granted, on the grounds that Plaintiffs had failed to exhaust their administrative remedies. [Doc. # 86]. On May 8, 2012,

1

Plaintiffs filed a Motion to Reconsider and Alter or Amend Judgment, introducing new facts in support of their allegation that they had been unable to exhaust administrative remedies. [Doc. # 88]. In response, this Court entered an Order on July 23, 2012, vacating the previous Order to the extent that it granted summary judgment to the Defendants based on Plaintiffs' failure to exhaust administrative remedies. In the same order, the Court determined that whether or not Plaintiffs had exhausted their administrative remedies, summary judgment was proper on the merits of the case. [Doc. # 94]. Plaintiffs have now filed a Second Motion to Reconsider and Alter or Amend Judgment, alleging that this Court misapplied the law to the merits of the case. [Doc. # 95].

The Court adopts the facts as set forth in this Court's Order of July 23, 2012 [Doc. # 94]. For the reasons stated below, the Court DENIES the Plaintiffs' Motion to Reconsider or Alter or Amend Judgment.

## I. Standard of Review

A district court has broad discretion in determining whether to grant a motion to alter or amend judgment. Fed. R. Civ. P. 59(e); *see also United States v. Metro. St. Louis Sewer Dist.*, 440 F.3d 930, 933 (8th Cir. 2006). Rule 59(e) motions "serve the limited function of correcting manifest errors of law or fact or to present newly discovered evidence." *Metro. St. Louis Sewer Dist.*, 440 F.3d at 933 (internal quotes omitted). The purpose of the Rule is to allow the district court "the power to rectify its own mistakes in the period immediately following the entry of judgment." *Norman v. Arkansas Dep't of Educ.*, 79 F.3d 748, 750

(8th Cir. 1996) (quoting *White v. New Hampshire Dep't of Employment Sec.,* 455 U.S. 445, 450, 102 S. Ct. 1162, 1166 (1982)). A Rule 59(e) motion to alter or amend must show: "1) an intervening change in controlling law; 2) the availability of new evidence not available previously; or 3) the need to correct a clear error of law or prevent manifest injustice." *Bannister v. Armontrout*, 807 F. Supp. 516, 556 (W.D. Mo. 1991), *aff'd*, 4 F.3d 1434 (8th Cir. 1993).

Importantly, a motion to reconsider "cannot be used to raise arguments which could, and should, have been made before the trial court entered final judgment." *Garner v. Arvin Indus. Inc.*, 77 F.3d 255, 258 (8th Cir. 1996); *see also Hagerman v. Yukon Energy Corp.*, 839 F.2d 407, 414 (8th Cir. 1988) (stating that a Rule 59(e) motion should not "serve as the occasion to tender new legal theories for the first time")(internal quotes omitted); *Innovative Home Health Care, Inc. v. P.T.-O.T. Associates of the Black Hills,* 141 F.3d 1284, 1286 (8th Cir. 1998) (Rule 59(e) "cannot be used to introduce new evidence, tender new legal theories, or raise arguments which could have been offered or raised prior to entry of judgment").

**II. Discussion**

The Court finds that Plaintiffs' Rule 59(e) Motion to Reconsider presents a new legal theory, and so must deny the Motion. However, in order to lay to rest Plaintiffs' repeated attempts to circumvent the final decision of this Court, some discussion of the Plaintiffs' contention regarding the appropriate standard to be applied to the merits is warranted.

3

### A. Section 504 and ADA Claims

Section 504 of the Rehabilitation Act and the ADA provide similar protections to disabled individuals, and so may be subject to the same analysis. *Hoekstra By & Through Hoekstra v. Indep. Sch. Dist. No. 283*, 103 F.3d 624, 626 (8th Cir. 1996) ("This court has held that enforcement remedies, procedures and rights under Title II of the ADA are the same as under § 504, and has consistently applied § 504 case law to ADA cases."); *Pottgen v. Missouri State High Sch. Activities Ass'n*, 40 F.3d 926, 930 (8th Cir. 1994) ("Congress intended Title II [of the ADA] to be consistent with section 504 of the Rehabilitation Act."). Disability, under both laws, is defined as "a physical or mental impairment that substantially limits one or more of the major life activities" of the individual. 28 C.F.R. § 35.104; 34 C.F.R. § 104.3.

Unlike the Individuals with Disabilities Education Act ("IDEA"),[1] Section 504 and the ADA do not statutorily create a right to a free appropriate public education ("FAPE") tailored to the individual student's needs. However, the federal regulations promulgated to enforce Section 504's nondiscrimination provisions create a similar requirement, stating, "A recipient [of federal funding] that operates a public elementary or secondary education program or activity shall

---

[1] Under the Individuals with Disabilities Education Act ("IDEA"), schools must provide all children with disabilities a free appropriate public education ("FAPE") tailored to their individual needs. 20 U.S.C. § 1412(a)(1). Schools must also develop an "individualized education program" ("IEP") that is "developed, reviewed, and revised for each child with a disability in accordance" with IDEA's statutory requirements. 20 U.S.C.A. § 1412(a)(4).

provide a free appropriate public education to each qualified handicapped person who is in the recipient's jurisdiction, regardless of the nature or severity of the person's handicap." 34 C.F.R. § 104.33(a). This regulation defines an appropriate education as "the provision of regular or special education and related aids and services that (i) are designed to meet the individual educational needs of handicapped persons as adequately as the needs of nonhandicapped persons are met and (ii) are based upon adherence to procedures that satisfy the requirements of [the 504 regulations]." 34 C.F.R. § 104.33(b)(1).[2]

Damages also differ under the IDEA and Section 504. The IDEA provides for injunctive or prospective relief, such as compensatory educational services, but generally not monetary damages. *See, e.g., Sellers by Sellers v. Sch. Bd. of City of Mannassas, Va.*, 141 F.3d 524, 527 (4th Cir. 1998); *Hall v. Knott County Bd. of Educ.*, 941 F.2d 402, 407 (6th Cir. 1991); *Charlie F. by Neil F. v. Bd. of Educ. of Skokie Sch. Dist. 68*, 98 F.3d 989, 991 (7th Cir. 1996). As part of compensatory educational services, the IDEA allows for reimbursement of educational services

---

[2] Implementation of an IEP developed under the IDEA is one means of satisfying Section 504's FAPE requirement. 34 C.F.R. §104.33(b)(2). As the Eighth Circuit has explained, "Both § 504 and IDEA have been interpreted as requiring states to provide a free appropriate public education to qualified handicapped persons, but only IDEA requires development of an IEP… ." *Yankton Sch. Dist. v. Schramm*, 93 F.3d 1369, 1376 (8th Cir. 1996). The Ninth Circuit has recently made clear that "FAPE under the IDEA and FAPE as defined in the § 504 regulations are similar but not identical.... FAPE under § 504 is defined to require a comparison between the manner in which the needs of disabled and non-disabled children are met, and focuses on the "design" of a child's educational program." *Mark H. v. Lemahieu*, 513 F.3d 922, 933 (9th Cir. 2008). Under Section 504's FAPE requirement, "school districts need only design educational programs for disabled persons that are intended to meet their educational needs to the same degree that the needs of nondisabled students are met, not more." *Id.* at 936-37.

where the public school district had failed to provide free appropriate public education to a disabled child. *School Comm. of Burlington v. Department of Educ. of Mass.*, 471 U.S. 359, 370, 105 S. Ct. 1996, 2002-03 (1985). On the other hand, Section 504 and the ADA provide for monetary damages, as well as equitable relief. *See Rodgers v. Magnet Cove Pub. Sch.*, 34 F.3d 642, 644 (8th Cir. 1994); *Greater Los Angeles Council on Deafness, Inc. v. Zolin*, 812 F.2d 1103, 1107 (9th Cir. 1987); *Consol. Rail Corp. v. Darrone*, 465 U.S. 624, 630, 104 S. Ct. 1248, 1252 (1984). In calculating reimbursement for educational services, the measure of "definable and concrete" costs expended by the parents is important; such "actual costs borne by parents for special education and related services provide an ascertainable benchmark for calculating the relief to which they may be entitled." *Sellers by Sellers,* 141 F.3d at 528.

To state a prima facie case of disability under Section 504 and the ADA, the plaintiff must prove that "he or she (1) is a qualified individual with a disability; (2) was denied the benefits of a program or activity of a public entity receiving federal funds; and (3) was discriminated against based on her disability." *M.Y., ex rel., J.Y. v. Special Sch. Dist. No. 1*, 544 F.3d 885, 888 (8th Cir. 2008). In addition, the Eighth Circuit has made clear that "[t]he reference in the Rehabilitation Act to 'discrimination' must require, we think, something more than an incorrect evaluation, or a substantively faulty individualized education plan, in order for liability to exist." *Monahan v. State of Neb.*, 687 F.2d 1164, 1170 (8th Cir. 1982). Beginning with the Eighth Circuit in *Monahan*, courts have

routinely held that the plaintiff must show that the defendant's discriminatory conduct reflected "either bad faith or gross misjudgment." *Monahan,* 687 F.2d at 1171 (8th Cir. 1982); *Hoekstra By & Through Hoekstra*, 103 F.3d at 627 (holding that "in the context of educational services for disabled children, a showing of gross misjudgment or bad faith on the part of school officials is necessary to succeed on an ADA claim"); *Sellers by Sellers,* 141 F.3d at 529; *D.A. ex rel. Latasha A. v. Houston Indep. Sch. Dist.*, 629 F.3d 450, 455 (5th Cir. 2010); *Campbell v. Bd. of Educ. of Centerline Sch. Dist.*, 58 F. App'x 162, 167 (6th Cir. 2003); *Brantley By & Through Brantley v. Indep. Sch. Dist. No. 625, St. Paul Pub. Sch.*, 936 F. Supp. 649, 657 (D. Minn. 1996); *Maus v. Wappingers Cent. Sch. Dist.*, 688 F. Supp. 2d 282, 294 (S.D.N.Y. 2010); *Wenger v. Canastota Cent. Sch. Dist.*, 979 F. Supp. 147, 152 (N.D.N.Y. 1997), *aff'd*, 181 F.3d 84 (2d Cir. 1999), *and aff'd*, 208 F.3d 204 (2d Cir. 2000).

### B.     Application

Plaintiffs contend that this court erroneously applied the standard of "bad faith and gross misjudgment," and that this error constituted manifest injustice meriting reconsideration under Rule 59(e). [Doc. # 95]. Plaintiffs claim that the requirement of "bad faith or gross misjudgment" under Section 504 is only applicable with regards to Plaintiffs' claim for monetary damages and not their claims for compensatory educational services. They further contend that the standards requiring bad faith and gross misjudgment are only applicable to a decision about which experts could reasonably disagree.

First, this theory was not advanced in Plaintiff's initial pleadings or in their response to Defendants' Motion for Summary Judgment, and as such is not appropriately raised under a Rule 59(e) motion to reconsider. See *Garner*, 77 F.3d at 258; *Hagerman*, 839 F.2d at 414; *Innovative Home Health Care, Inc.*, 141 F.3d at 1286. However, for purposes of clarity and finality, the Court will briefly address the substance of the claim.

Plaintiffs cite two cases in support of their first assertion, *Walker v. Dist. of Columbia*, 157 F. Supp. 2d 11 (D.D.C. 2001), and *AP ex rel. Peterson v. Anoka-Hennepin Indep. Sch. Dist. No. 11*, 538 F. Supp. 2d 1125 (D. Minn. 2008). *Walker* involved two claims, one for monetary damages for violation of the IDEA via § 1983 and one for monetary damages under Section 504. The court applied the "bad faith or gross misjudgment" standard to the claim for monetary damages under Section 504, but said nothing regarding any claim for compensatory educational services, either via reimbursement for such services or injunctive relief; indeed, there is no evidence that the plaintiffs in that case were claiming compensatory educational services. *Walker*, 157 F. Supp. 2d at 35. As such, *Walker* cannot be read to stand for the theory Plaintiffs advance.

*AP ex rel. Peterson* involved a school district's failure to provide reasonable accommodations in a summer day-care program to a disabled student, allegedly in violation of the ADA, Section 504, and Minnesota's disability discrimination statute. The district court in that case determined it was not clear from the Eighth Circuit's reasoning in *Monahan* that "bad faith or gross

misjudgment is a necessary precondition to *any* § 504 claim," and decided instead to apply a deliberate indifference standard which had been adopted by the Ninth Circuit.  First, the Court is not persuaded that the Eighth Circuit would agree with the Ninth Circuit on this issue.  *Monahan* suggests otherwise.  Second, the *Peterson* case did not involve a challenge to educational services, but Plaintiffs clearly have raised such a challenge here.  Third, even if the deliberate indifference standard applied to the claim for compensatory educational services, Plaintiffs have failed to show facts that support such a claim.  Indeed, in *Peterson*, the judge ultimately determined the school had not acted with deliberate indifference, even though its response had been "slow, clumsy, unresponsive, and, at times, incompetent."  *Id*. at 1137.

Furthermore, contrary to Plaintiffs' claim, courts have generally not distinguished between the type of relief sought under Section 504 when applying the "bad faith or gross misjudgment" standard.  Rather, courts have uniformly applied this standard regardless of whether the relief requested is in the form of monetary damages or compensatory educational services.  *See, e.g*., *St. Louis Developmental Disabilities Treatment Ctr. Parents Ass'n v. Mallory*, 591 F. Supp. 1416, 1467 (W.D. Mo. 1984), *aff'd sub nom. St. Louis Developmental Disabilities Treatment Ctr. Parents' Ass'n v. Mallory*, 767 F.2d 518 (8th Cir. 1985); *C. ex rel. Connor v. Missouri State Bd. of Educ*., 2009 WL 2928758 at *8 (E.D. Mo. Sept. 8, 2009); *Moubry v. Indep. Sch. Dist. 696, Ely, Minn*., 9 F. Supp. 2d 1086, 1110 (D. Minn. 1998); *Sellers by Sellers*, 141 F.3d at 529; *D.A. ex rel. Latasha A. v*, 629

9

F.3d at 455; *Campbell*, 58 F. App'x at 167; *Torrence v. Dist. of Columbia*, 669 F. Supp. 2d 68, 71 (D.D.C. 2009); *T.B. ex rel. Brenneise v. San Diego Unified Sch. Dist.*, 2012 WL 1611021 at *7 (S.D. Cal. May 8, 2012); *E.W. v. Sch. Bd. of Miami-Dade County Florida*, 307 F. Supp. 2d 1363, 1371 (S.D. Fla. 2004).

Plaintiffs' other new legal theory is that the "bad faith or gross misjudgment" standard applies only to actions about which experts may disagree. In support of this claim, the Plaintiffs rely primarily on *Shirey ex rel. Kyger v. City of Alexandria Sch. Bd.*, 229 F.3d 1143 (4th Cir. 2000). That case involved a school district's failure to evacuate a disabled student from a school during a bomb threat. The Fourth Circuit held that the heightened "bad faith or gross misjudgment" standard was appropriate in cases involving educational plans for disabled children because "negligent error in the development of an appropriate IEP [Individualized Education Plan] does not amount to the kind of invidious discrimination at which the Rehabilitation Act or the ADA is directed." *Id.* at *4. However, the Fourth Circuit determined that this heightened standard did not apply to the school district's actions in this case, as "[t]here is nothing 'arguable' about safely evacuating disabled children from a school building during an emergency." *Id.* at *5. Instead, the Fourth Circuit determined that the relevant inquiry was simply whether the district had denied the plaintiff "access to the program in question – namely, safe evacuation from school buildings during an emergency." *Id.*

Case 2:11-cv-04029-NKL   Document 100   Filed 11/15/12   Page 10 of 12

Plaintiffs interpret this case to mean that the "bad faith or gross misjudgment" standard should only apply to school district actions about which experts could reasonably disagree. However, even assuming that *Shirey ex rel Kyger* stands for that proposition, it is distinguishable from the instant case in several respects: it explicitly does not involve an educational plan, as the instant case does, and the damages requested had nothing to do with compensatory educational services, but were rather explicitly limited by the court to injunctive relief. Further, relying on *Monahan*, the Fourth Circuit prior to *Shirey* had made clear that when parents merely assert that certain behavior by a child "should have alerted" defendants to the child's disability and the need for a FAPE, this is "at best, a negligence claim – that defendants should have recognized [the student's] disability." *Sellers by Sellers*, 141 F.3d at 529. Therefore, there is no indication that the Fourth Circuit would extend its limited ruling in *Shirey ex rel Kyger* to cases involving Plaintiffs' claims.

## III. Conclusion

From the above analysis, it is clear that the applicable standard regarding Plaintiffs' claims is the "bad faith and gross misjudgment" standard set forth in *Monahan*. As the Court has stated previously, Plaintiffs have not met their burden of proving that Defendants acted with bad faith or gross misjudgment. Thus, there is neither a clear error of law or manifest injustice and Plaintiffs' Second Motion to Reconsider or Alter or Amend Judgment [Doc. # 95] is DENIED.

s/ Nanette K. Laughrey
                                                          NANETTE K. LAUGHREY
                                                          United States District Judge

Dated:  November 15, 2012
Jefferson City, Missouri